# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ALLEN HAMMONDS, | : | 4:14-CV-00527 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I.  Introduction.

In the present action, *pro se* plaintiff Richard Allen Hammonds ("Hammonds"), an inmate presently incarcerated at the State Correctional Institution at Smithfield in Huntington, Pennsylvania ("SCI-Smithfield") raises claims pursuant to 42 U.S.C. § 1983 based on alleged constitutional violations that occurred within multiple Pennsylvania correctional facilities.  The defendants are current and former employees of the Pennsylvania Department of Corrections ("DOC") and other contract medical personnel who provide services at state prisons.  Currently pending before the Court is Hammonds's fourth motion for a temporary restraining order and preliminary injunction.  Because Hammonds has

not met his heavy burden to demonstrate that he merits receiving the extraordinary relief he seeks, we recommend that his motion be denied.

## II. Background and Procedural History.

Hammonds commenced the present action on March 20, 2014, by filing a complaint against 30 defendants. *Doc. 1.* In his complaint, Hammonds contends, among other things, that he was denied mental health treatment while he was incarcerated at the State Correctional Institutions in Frackville and Fayette, Pennsylvania ("SCI-Frackville" and "SCI-Fayette" respectively). *Id.* at 4-9. He also claims that officials at SCI-Frackville poisoned his food and that he was denied medical treatment for the conditions and symptoms caused by the poisoning. *Id.* at 6-7.

The present motion, filed on September 11, 2015, represents Hammonds's fourth attempt[1] to seek injunctive relief. *Doc. 102* (Hammonds's fourth motion).

---

[1] Hammonds's first motion for a preliminary injunction, which he filed on May 2, 2014*,* was denied on January 7, 2015. *See Doc. 8* (Hammonds's first motion); *Doc. 34* (report and recommendation); *Doc. 52* (order adopting report and recommendation and denying first motion). Hammonds then filed his second motion for a preliminary injunction on January 13, 2015, which was subsequently denied on October 7, 2015. *See Doc. 53* (Hammonds's second motion); *Doc. 94* (report and recommendation); *Doc. 107* (order adopting report and recommendation and denying second motion). Hammonds filed a third motion for a preliminary injunction on July 22, 2015, which was deemed withdrawn on February 29, 2016. *Doc. 90* (Hammonds's third motion); *Doc. 113* (order deeming Hammonds's third motion withdrawn).

He began by filing a motion, declaration and brief in support. *Doc. 102* (motion); *Doc. 103* (declaration); *Doc. 104* (brief in support). In his declaration and brief in support, Hammonds suggests that he is currently experiencing serious and potentially life-threatening medical ailments stemming from the alleged poisoning at SCI-Frackville and that he requires immediate medical attention.[2] *Doc. 103* at 1; *Doc. 104* at 2-3.

Hammonds states that he has visited prison medical facilities[3] to receive care, and that bloodwork taken during those visits showed that his bilirubin levels were elevated. *Doc. 103* at 1; *Doc. 104* at 2-3. He next avers that his elevated bilirubin levels indicate the presence of a severe medical issue, but "due to the complexity of the symptoms he is [experiencing, he is] unable to receive treatment" and the nurses have not made arrangements to get him the treatment he seeks. *Doc. 103* at 2. In terms of relief, Hammonds suggests that his symptoms require immediate gastroenterological intervention and he requests a "temporary restraining order requiring the defendants to arrange for an examination and a plan

---

[2] In documents relating to the present motion, Hammonds does not specify where the poisoning occurred. However, Hammonds is clear in his original complaint in contending that the positioning occurred at SCI-Frackville. *Doc. 1* at 6.

[3] Hammonds does not specify from which facility he has sought medical attention, and as a result, we will construe Hammonds's present motion as referring to prison medical facilities at the State Correctional Institution in Camp Hill, Pennsylvania ("SCI-Camp Hill"), the facility in which he was incarcerated when he filed the present motion. *Doc. 102* at 1; *Doc. 104* at 4; *Doc. 106* at 4.

of treatment by a qualified specialist and a preliminary injunction requiring the defendants to carry out that plan of treatment." *Id.; Doc. 104* at 2.

On September 25, 2015, the defendants filed a brief in opposition to Hammonds's motion. *Doc. 105*.  Hammonds then filed a reply brief.  *Doc. 106*.


## III.  Discussion.

### A. Legal Standards.

Motions for preliminary injunctive relief are governed by Rule 65[4] of the Federal Rules of Civil Procedure and are judged against exacting legal standards. To obtain a preliminary injunction or a temporary restraining order, a movant "must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010).  It is the movant's burden to show a likelihood of success on the merits. *Campbell Soup Co. v. ConAgra Inc.*, 977 F.2d 86, 90 (3d Cir. 1992).

---

[4]  Pursuant to Rule 65(a)(1) of the Federal Rules of Civil Procedure, a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). In contrast, a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if certain conditions are met.  Fed. R. Civ. P. 65(b)(1).

4

Preliminary injunctive relief is not granted as a matter of right.  *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982); *see also Thomas v. Pennsylvania Dep't of Corr.*, 3:13-CV-2661, 2014 WL 3955105, at *1 (M.D. Pa. Aug. 13, 2014) ("An injunction is an 'extraordinary remedy' that is never awarded as of right."). Rather, the decision to grant or deny such relief is committed to the discretion of the district court.  *United States v. Price*, 688 F.2d 204, 210 (3d Cir. 1982).

Generally, preliminary injunctive relief is an extraordinary remedy that places precise burdens on the moving party, and "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).  Further, where the requested preliminary injunctive relief "is directed not merely at preserving the *status quo* but . . . at providing mandatory relief, the burden on the moving party is particularly heavy."  *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).  Mandatory injunctions should be used sparingly. *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982).

For a party to sustain his burden of proof that he is entitled to preliminary injunctive relief under Rule 65, he must demonstrate both a reasonable likelihood of success on the merits and irreparable harm if the requested relief is not granted.

5

*Abu-Jamal v. Price*, 154 F.3d 128, 133 (3d Cir. 1998); *Kershner*, 670 F.2d at 443.

"As these elements suggest, there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). "To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Sutton v. Cerullo*, 3:CV-10-1899, 2014 WL 3900235, at *5 (M.D. Pa. Aug. 8, 2014). To establish irreparable injury, "the moving party must establish that the harm is imminent and probable." *Stilp v. Contino*, 629 F. Supp. 2d 449, 466 (M.D. Pa. 2009). "The mere risk of injury is not sufficient to meet this standard." *Id.* And the burden of showing irreparable injury "is not an easy burden" to meet. *Moore v. Mann*, 3:CV-13-2771, 2014 WL 3893903, at *2 (M.D. Pa. Aug. 7, 2014). In assessing a motion for preliminary injunctive relief, the court must also consider the harm to the defendants and whether granting the preliminary injunction will be in the public interest. *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388 (3d Cir. 2012).

**B. Hammonds Has Failed to Establish a Reasonable Likelihood of Success on the Merits.**

Hammonds's underlying § 1983 action[5] appears to raise an Eighth Amendment claim by alleging that various prison officials were deliberately indifferent toward his medical needs. *Doc. 104* at 3.   Hammonds avers that he has "a great likelihood of success on the merits [because of] what the defendants have done" to allegedly deposit chemicals in his food, infect him with hepatitis and possibly cirrhosis, and to deny him necessary medical treatment. *Id.*  Hammonds further suggests that the defendants' actions amount to cruel and unusual punishment. *Id.*  In response, the defendants contend that Hammonds "cannot demonstrate that prison staff were deliberately indifferent to his medical needs when he is regularly meeting with medical professionals to monitor and treat his aliments and [he] merely suspects that he needs to see a gastroenterologist." *Doc. 105* at 7.

The Eighth Amendment guarantees the right to be free from cruel and unusual punishment inflicted by the Government.  *See* U.S. CONST. amend. VIII.  "The primary concern of the drafters [of the Eighth Amendment] was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment." *Estelle v. Gamble*,

---

[5] As we have previously noted in an earlier report and recommendation issued during the course of this litigation, Hammonds's Eighth Amendment claim is not at all precise.  We have liberally construed Hammonds's complaint, and to the extent any distortions have occurred, they have not been by design. *See Doc. 94.*

7

429 U.S. 97, 102 (1976).  In the Twentieth Century, however, the Supreme Court held that the Amendment prohibits more than physically barbarous punishments "embod[ying] 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency…,' against which [federal courts] must evaluate penal measures."  *Id.* (citations omitted). Thus, the Supreme Court has since held repugnant to the Eighth Amendment "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society … or which involve the unnecessary and wanton infliction of pain."  *Id.* (quoted cases omitted).  Under this broad standard, the government has an obligation to provide adequate, or basic, medical care for those whom it is punishing by imprisonment. *See id.* at 103, 105; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Thus, when a government official acts, or fails to act, with deliberate indifference to an inmate's serious medical needs, unnecessary and wanton infliction of pain is inflicted: pain that is proscribed by the Eighth Amendment.  *Id.* at 104.

Accordingly, to state an Eighth Amendment claim based on a denial of medical care, a plaintiff must plausibly show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). This deliberate-indifference state of mind is more blameworthy than mere negligence.  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  To establish deliberate

8

indifference, a plaintiff must show that a prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the official drew the inference. *Id.* at 837; *Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not. . . cannot . . . be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838. Also, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. Furthermore, it is important that the movant "establish[es] a nexus between the injury claimed in the motion and the conduct asserted in the underlying complaint." *Watson v. Fisher*, No. 09-87J, 2013 WL 3733591, at *3 (W.D. Pa. July 16, 2013).

Here, even if we were to assume that Hammonds has established a nexus between the injury claimed in his motion – elevated bilirubin levels – and the conduct asserted in the underling complaint – the alleged poisoning and subsequent failure of medical staff to treat his injuries – Hammonds does not demonstrate that prison officials acted with the requisite culpability for his Eighth Amendment denial of medical care claim to succeed. Although Hammonds states that he has serious medical needs, he does not demonstrate that prison officials have ignored

those needs.  To the contrary, Hammonds admits that he has received medical care on numerous occasions.  *Doc. 103* at 1; *Doc. 104* at 5, 9.   *See Clark v. Doe*, No. CIV. A. 99–5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct.13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."); *see also Walker v. Fayette County*, 599 F.2d 573, n.2 (3d Cir.1979) ("We will distinguish between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment. 'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

If Hammonds is attempting to argue that the medical treatment he has received to address his elevated bilirubin levels has been insufficient, he has not illustrated that such insufficiency rises to the level of deliberate indifference. Hammonds does not allege, for example, that medical officials referred him to a gastroenterologist, and that prison officials maliciously curtailed his attempts to seek gastroenterological care.  Similarly, though he may disagree with the care medical professionals have provided, such disagreements also fall short of the deliberate indifferent standard.  "'[M]ere allegations of malpractice' or 'disagreement as to the proper medical treatment' do not constitute deliberate

10

indifference." *Viera v. Williams*, No. 1:13-CV-02424, 2015 WL 5913193, *3

(M.D. Pa. Oct. 7, 2015) (quoting *Monmouth Cty. Corr. Institutional Inmates v.*

*Lanzaro* (*MCCII* ), 834 F.2d 326, 346–47 (3d Cir. 1987)).

As a result, Hammonds has not alleged facts to demonstrate that medical

professionals exhibited the type of "more blameworthy than mere negligence"

culpability standard required to make a finding of deliberate indifference.

Accordingly, because Hammonds has not demonstrated that there is a reasonable

likelihood his claim will succeed on the merits, this factor does not weigh in favor

of granting Hammonds preliminary injunctive relief.


### C. Hammonds Has Not Established That He Will Incur Irreparable Injury.

Hammonds appears to allege that his elevated bilirubin levels have subjected

him to, among other conditions, extreme pain and that if those levels are left

untreated without gastroenterological intervention, he may be subjected to further

life-threatening injuries. *Doc. 103* at 1-2; *Doc. 104* at 1-3. Hammonds also

contends that the deprivation of his constitutional rights constitutes irreparable

harm. *Id.* In response, the defendants aver that Hammonds "cannot demonstrate

that he will be irreparably harmed when he is regularly meeting with medical

professionals to monitor and treat his ailments and merely suspects that he needs to see a gastroenterologist." *Doc. 105* at 9.

"Irreparable injury is established by showing that [p]laintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." *Messner v. Bunner*, No. 07–112E, 2009 WL 1406986, at *4 (W.D. Pa. May 19, 2009). In this context, the word irreparable has a specific meaning and connotes "that which cannot be repaired, retrieved, put down again, [or] atoned for . . . ." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted). Thus, an injunction will not issue "simply to eliminate the possibility of a remote future injury . . . ." *Acierno*, 40 F.3d at 655 (citation omitted).

Here, because Hammonds admits that he has frequented the prison's medical facilities and has been cared for by one or more medical professionals, he cannot then suggest that he has incurred irreparable harm because of a lack of medical treatment. *Doc. 103* at 5, 9; *Doc. 104* at 1. Further, since filing the present motion, it appears that Hammonds has since been transferred to SCI-Smithfield. *Doc. 105* at 1. Thus, to extent Hammonds's present motion seeks relief from a

lack of medical treatment provided at SCI-Camp Hill[6], Hammonds cannot show that he is still subject to the condition that he suggests entitles him to preliminary injunctive relief.  In other words, because Hammonds is no longer incarcerated at SCI-Camp Hill, he cannot show that he will be irreparably injured because of a lack of medical treatment provided at SCI-Camp Hill.  Accordingly, this factor does not weigh in favor of granting Hammonds preliminary injunctive relief.

### D. Providing Hammonds With Injunctive Relief May Harm Both the Defendants' and the Public's Interests.

Hammonds avers if he is granted injunctive relief, the defendants will not incur any harm because "taking the plaintiff to a suitable doctor and then carrying out the doctors['s] orders . . . amounts to no more than business as usual." *Doc. 104* at 2.  In response, the defendants suggest, however, that transporting Hammonds, a maximum security prisoner, to a "non-secure hospital with no showing of a need for treatment . . . implicates numerous safety, security, staffing and cost concerns to both the Department of Corrections and the public." *Doc. 105* at 11.

---

[6] *See, supra*, n.3.  Because Hammonds does not specify in which facility he experienced a lack of medical treatment vis-à-vis his elevated bilirubin levels, we construed Hammonds's present motion as referring to prison medical facilities at SCI-Camp Hill because that was the facility in which he was incarcerated when he filed the present motion. *Doc. 102* at 1; *Doc. 104* at 4; *Doc. 106* at 4.

13

Granting the injunctive relief requested by Hammonds, *i.e.*, an order specifying how Hammonds's medical condition should be handled, would "effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, [which] could harm both the defendants' and the public's interest." *Kelly v. Merrill*, No. 1:14-CV-2322, 2014 WL 7740025, at *9; *see generally Jenkins v. Crayton*, No 12-1533, 2013 WL 3467191, at *2 (W.D. Pa. July 10, 2013) ("The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the 'operation of a correctional institution is at best an extraordinarily difficult undertaking.'" (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974))). In the prison context, the interest in penological order could be adversely affected if the Court began dictating the specific course of treatment for Hammonds, who is one inmate out of thousands in Pennsylvania's prison system. Accordingly, because issuing such an order may harm both the defendants' and the public's interest, these two factors also do not weigh in favor of granting Hammonds preliminary injunctive relief.

## E. Conclusion.

In sum, Hammonds has not demonstrated that he is entitled to the extraordinary relief that he seeks. All four factors that govern issuance of such relief under Fed. R.

Civ. P. 65 weigh against Hammonds and compel us to recommend that the Court

deny his motion for a temporary restraining order and a preliminary injunction.


## IV.  Recommendations.

Accordingly, for the foregoing reasons, we recommend that Hammonds's

motion (*doc. 102*) for a temporary restraining order and a preliminary injunction be

denied.  We further recommend that the case be remanded to the undersigned for

further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy thereof.  Such party
> shall file with the clerk of court, and serve on the magistrate judge and
> all parties, written objections which shall specifi0cally identify the
> portions of the proposed findings, recommendations or report to
> which objection is made and the basis for such objections.  The
> briefing requirements set forth in Local Rule 72.2 shall apply.  A
> judge shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which
> objection is made and may accept, reject, or modify, in whole or in
> part, the findings or recommendations made by the magistrate judge.

The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of July, 2016.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge